No. 21,580.

E. E. GLASSCOCK et al., *Appellants,* v. THE CITY OF LARNED, *Appellee.*

SYLLABUS BY THE COURT.

CITIES—*Street Improvements—Property Subject to Taxation Therefor— Special Assessments—Interpretation of Statutes.*  Section 1705 of the General Statutes of 1915 locates burdens of taxation for various municipal purposes, and in the case of curbing, guttering, and paving streets, places the burden on lots and pieces of ground to the center of the block.  Section 1764 of the General Statutes of 1915 provides methods of instituting proceedings for street improvements, and methods of financing such improvements; and expressions used indicating property are designations, and not delimitations, of assessment areas, and refer to the abutting assessment districts created by section 1705.

Appeal from Pawnee district court; ALBERT S. FOULKS, judge.  Opinion filed June 8, 1918.  Affirmed.

*F. Dumont Smith,* of Hutchinson, for the appellants.

*George W. Finney,* and *Roscoe E. Peterson,* both of Larned, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to enjoin proceedings instituted to determine special assessments for street improvements. A demurrer was sustained to the petition, and the plaintiffs appeal.

The city is a city of the second class, and the proceedings were initiated by its mayor and council. The various lots affected do not touch the street to be improved. They all lie, however, within the assessment district extending to the center of blocks on each side of the street, contemplated by section 1705 of the General Statutes of 1915 (Laws 1911, ch. 102, § 1). The contention is that the provision establishing the assessment district extending to the center of the block was repealed by implication by section 1 of chapter 112 of the Laws of 1913, which appears as section 1764 of the General Statutes of 1915.

In their original form, the acts of 1911 and 1913 were respectively section 32 and section 75 of chapter 100 of the Laws of 1872, which was a complete act for the organization and government of cities of the second class. Broadly speaking, section 32 granted power to levy taxes and special assessments, and power to make municipal improvements, including street improvements, and located the burdens of taxation for various municipal purposes. For general revenue purposes the burden was placed on all taxable property within the city; for grading streets and some other purposes, on all taxable property within the city; for building and repairing sidewalks, on abutting lots and pieces of ground, according to the front foot; for paving, macadamizing, curbing, and guttering streets or avenues, assessments were to be made "for each block separately on all lots and pieces of ground to the center of the block on either side of such street or avenue, the distance improved or to be improved." Assessments were to be made according to appraised value, to be determined by procedure specified at length. Section 32 has been amended several times, but in its present form, as section 1705 of the General Statutes of 1915, its general function remains the same, except that the subject of financing the improve-

ment of street intersections by means of bond issues has been added.

Section 75 related to the method of instituting proceedings for street improvements, and read as follows:

"When the city council shall deem it necessary to open, widen, extend, grade, pave, macadamize, bridge, curb, gutter, or otherwise improve any street, sidewalk, alley, avenue or lane within the limits of the city for which a special tax is to be levied as herein provided, such council shall by resolution declare such work or improvement necessary to be done, and such resolution shall be published for four consecutive weeks in the official newspaper of the city; and if a majority of the resident owners of the property liable to taxation therefor, shall not within twenty days thereafter file with the clerk of such city their protest against such improvement, then such council shall have power to cause such improvement to be made, and to contract therefor, and to levy and collect the taxes as herein provided." (Laws 1872, ch. 100.)

The phrase "as herein provided," twice used in this section, referred, not to section 75, but to the act itself, and particularly to section 32 of the act.

Section 75 has been amended several times. A provision was added whereby property owners may institute proceedings for street improvements, and methods of financing street improvements were tacked to the section, so that section 1764 of the General Statutes of 1915 now embraces two methods of initiating proceedings for street improvements, and various ways of financing street improvements.

In dealing with the subject of initiating proceedings by resolution of the mayor and commissioners or mayor and council, the act of 1913 employed substantially the concluding phraseology of old section 75, authorizing the council to cause the improvement to be made, to contract therefor, and to levy and collect taxes "as herein provided." In dealing with the subject of initiating proceedings by petition of property owners, the following phraseology was employed:

"The council shall cause such work to be done, or such improvement to be made, and shall contract therefor, and shall levy taxes for all such improvements, as herein provided, upon the abutting property."

In dealing with the subject of financing street improvements reference was made to assessments on "abutting lots," and "property chargeable" for the cost of improvements. The contention is that the provisions of section 1764 (act of 1913) relating to assessments "as herein provided" and "as herein pro-

vided upon the abutting property" repeal the portion of section 1705 (act of 1911) extending the assessment area to the center of the block.

The plaintiffs say that the act of 1913 is the later act. This is not true with respect to the subject of the extent of the assessment district, which, if embraced in section 1764 at all, came into it long before the year 1913, the 1913 amendment relating entirely to other matters. The following quotation from the brief for the city is quite pertinent:

"Now, let us ascertain just how and in what manner the legislature manifested its intention that section 1764 should prevail over section 1705. In 1872, 1873 and 1881 they said the assessment should be to the center of the block. In 1885 and 1887 they said it should be on the abutting property. By appellants' logic, section 1705 was then *pro tanto* repealed. In 1903 and 1905 the legislature again said that the assessment should be to the center of the block. By the same logic, section 1764 was then *pro tanto* repealed. In 1911, by two acts approved the same day, they prescribed that the assessment should be to the center of the block and also upon the abutting property; and in 1913, by one act that was duly passed and another that was somewhat crippled in the legislative melee, they said the assessment should be on the abutting property and also to the center of the block. It would thus appear, according to appellants' logic, that for the past thirty-three years one of the pastimes of the legislature has been the alternate repealing and reviving of the "abutting-property" and "center-of-the-block" provisions. Is n't it rather strange, if the legislature has been repeatedly and alternately making up its mind to repeal both these provisions, that it has never come out squarely and said so?"

The conclusion to be derived from this legislative history is that the legislature itself has never regarded the two sections as conflicting. Repeals by implication are not favored. It is the duty of the court to give effect to both sections, if possible, as the legislature plainly intended, and this may be done by keeping in mind the distinct purposes to be accomplished by each. Section 1705 now, as always heretofore, specifically defines the territory on which special assessments shall be laid. Section 1764 provides methods of instituting and financing street improvements. The expressions indicating property, used in section 1764, are merely brief and convenient designations, and not delimitations, of taxable area, and refer to the "abutting" assessment districts created by section 1705. The expression "as herein provided," used in section 1764, does not stand in the way of the interpretation suggested.

When first used in the provision for proceeding by resolution it is purely a survival, brought forward from old section 75, where it referred specifically to the center-of-the-block district. The expression was probably used by the draughtsman of the provision for proceeding by petition because it was used in the provision for proceeding by resolution. If not, it may well refer to the financial scheme of the section, levying the entire assessment all at once, or in installments, etc.

The proposed reconciliatory interpretation is fortified by some further indicia of legislative intent, a provision in section 1764 which would otherwise be meaningless, and some cognate legislation. Besides this, many, if not most, cities in this state are platted according to the lot and block system, and it seems quite absurd to charge the legislature with casting the entire cost of paving streets at the ends of blocks on none but the lots adjoining, and usually extending parallel with, such streets. If such were the case, property assessment to pay for the improvement could be defeated by conveyances of very small portions of the lots next to the street.

The plaintiffs interpose as an obstacle to the proposed interpretation the provision of section 1764, authorizing "property owners fronting on a street" to institute proceedings by petition. The subject of who may set in motion improvement proceedings has nothing to do with where the burden of special assessments shall finally rest. No constitutional right of the property owner is involved. He is not entitled to be heard on the subject of the public need, unless the legislature give him the right. He is only entitled to be heard with respect to the resulting charge on his property. No doubt the provision may be difficult of application. A "property owner" ordinarily fronts in the opposite direction from his back. A lot may front one way, and a business house or residence on the lot may front another way. The meaning is, of course, obvious when applied to the owners of lots lying side by side, facing a street subject to improvement, and extending backward from the street half way toward the other side of the block. In this instance the proceeding was instituted by resolution, and not by petition, and the question is: Where does the burden rest? Complications may be left for solution until the question is: Who may institute improvement proceedings by petition?

The judgment of the district court is affirmed.